A95A1928. MYRICK et al. v. STEPHANOS et al.
(472 SE2d 431)

BEASLEY, Chief Judge.

Plaintiff Stephanos was severely injured when a tractor-trailer driven by defendant Myrick, owned by defendant Falcon Transport, Inc., and insured by defendant Reinsurance Corporation of New York collided with Stephanos' car. Stephanos' wife asserts a loss of consortium claim. Defendants appeal the judgment entered on a jury verdict awarding Stephanos $1,989,726 and his wife $45,000.

1. In their first three enumerations, defendants meritoriously contend that in closing argument plaintiffs' counsel made improper comments to the effect that the jury should award damages: (1) because of the negligence of Reinsurance, through Falcon and Myrick; (2) because of the unsympathetic treatment of Stephanos by Reinsurance following the collision; and (3) to deter Reinsurance from treating other accident victims the way it had treated Stephanos.

Although OCGA § 46-7-12 (e) permits an injured person to join the insurance carrier as a party defendant in the same action brought against the motor carrier, *Grissom v. Gleason*, 262 Ga. 374 (418 SE2d 27) (1992), the insurance carrier is neither a joint tortfeasor nor responsible for the motor carrier's negligent conduct under a theory of vicarious liability. See *Andrews v. Yellow Freight System*, 262 Ga. 476 (421 SE2d 712) (1992).

Consequently, counsel's attempts in closing argument to impute Myrick's and Falcon's negligence to Reinsurance were improper and prejudicial, as was the argument that the jury should base its award of compensatory damages on the insurance carrier's treatment of Stephanos independent of the collision. Such conduct, even if fact, is not relevant to the issue of compensatory damages in this case. Moreover, plaintiffs cite no evidence of such fact. Counsel's deterrence argument amounted to a plea for punitive damages, which were not in issue. Compare *McClure v. Gower*, 259 Ga. 678, 681-683 (3) (385 SE2d 271) (1989).

2. Defendants moved for a directed verdict on Stephanos' claims for lost earning capacity and future lost wages except insofar as the evidence showed he would lose wages due to future surgery for a period of time. The court granted the motion as to future lost wages on

the ground that Stephanos had not lost any wages because he was being paid his full salary. But it erroneously denied the motion as to lost earning capacity.

"Diminished capacity to labor" is an element of pain and suffering recoverable by one who is physically injured. *Leggett v. Benton Bros. Drayage &c. Co.*, 138 Ga. App. 761, 764-765 (1) (227 SE2d 397) (1976). It is an item of general damages. *Wright v. Lail*, 219 Ga. 607, 610 (135 SE2d 418) (1964). "The rule for determining such damages is the enlightened consciences of fair and impartial jurors. [Cit.]" *City Council of Augusta v. Drawdy*, 75 Ga. App. 543, 547 (2) (43 SE2d 569) (1947).

"Recovery for 'lost earning capacity' is, however, a separate element of damages recovery of which physical injury to the plaintiff resulting in a permanent or total physical disability is the essential element. [Cit.]" (Emphases omitted.) *Leggett*, supra at 765 (1). "[T]he measure of such damages involves numerous considerations, among which are, first, the earnings before the injury, earnings after the injury, probability of increased or decreased earnings in the future, considering the capacity of the injured party, effects of sickness and old age, etc." *Drawdy*, supra. "[R]ecovery for 'lost earning capacity' is an item of special damages which requires some evidence upon which a jury can base with reasonable certainty a finding as to amount of such damages. [Cit.]" (Emphasis omitted.) *Leggett*, supra. " ' "While proof of the plaintiff's actual earnings, either before or after the injury, is not essential to the establishment of the value of the plaintiff's decreased earning capacity, there must nevertheless appear some evidence, either direct or circumstantial, tending to show what the plaintiff was capable of earning both before and after the injury. . . ." (Cits.)' [Cit.]" *Dept. of Human Resources v. Thomas*, 217 Ga. App. 174, 178-179 (2) (456 SE2d 724) (1995). Thus, a claim for "lost earning capacity" embraces a recovery for lost future earnings. See *Super Discount Markets v. Coney*, 210 Ga. App. 659 (1) (436 SE2d 803) (1993); *Walkley v. Dukes*, 175 Ga. App. 820, 821 (3) (334 SE2d 868) (1985).

A recovery for the separately recognized claim of "loss of future earnings" is available where there is proof of loss of definite earnings that would have been received in the future but for an injury, even though the injury is not permanent. See *Hunt v. Williams*, 104 Ga. App. 442, 448 (5), 450 (122 SE2d 149) (1961); F. M. Eldridge, Personal Injury and Property Damage — Damages, The Law in Georgia, § 5-7.

Stephanos presented evidence of what he was earning as a pilot before his injuries. There is evidence he could be permanently grounded by his injuries if he does not pass a medical examination his employer has instructed him to take and that a visual impairment

caused by his injuries could render him unable to fly. There is also evidence that following the accident, he continued to pass FAA flight physical examinations and to obtain his pilot recertifications and excellent performance reviews by his supervisor. The evidence does not show the probability of his being permanently grounded or becoming unable to fly.

Stephanos presented medical testimony showing that his injuries have resulted in a permanent impairment to his lower extremities and whole body in certain percentages, and that he could lose his class I FAA medical certificate as a result. But there is no evidence of the degree to which the disability or loss of the medical certificate may reasonably affect his future income. Such evidence is required in order to support a charge on lost earning capacity. *Long v. Serritt*, 102 Ga. App. 550, 554-555 (4) (117 SE2d 216) (1960). Its absence prevents the jury from finding with reasonable certainty the amount of damages for this loss. Although the court gave a legally correct charge on the issue of lost earning capacity, the charge was not supported by the evidence and it was error to give it.

3. Defendants contend that the court erred in admitting a letter from the FAA.

On cross-examination, Stephanos was asked whether he had passed all of his physical examinations without comment from the FAA. He responded in the negative, stating that he had recently received a notification from the FAA questioning his last physical. On redirect examination, he testified that in this letter, the FAA had asked him to submit all of his medical records and undergo an additional eye examination. Defendants later objected to the admission of this letter on grounds that it was hearsay and not properly authenticated. The court overruled the objection for the reason that the letter was admissible to explain Stephanos' conduct in taking the eye examination, not to prove the truth of its contents.

This was error. Stephanos never testified that he had actually taken an eye examination. Rather, his testimony was that he had received a letter from the FAA requesting, among other things, that he take an eye examination. The letter was not relevant to explain Stephanos' conduct. Compare *Bodrey v. Bodrey*, 246 Ga. 122, 123 (2) (269 SE2d 14) (1980).

4. Defendants contend it was error to allow plaintiffs' counsel, over objection, to violate the Golden Rule in his closing argument by asking the jurors to place themselves in Stephanos' shoes.

In determining the amount of compensation to be awarded, plaintiffs' counsel made repeated statements asking the jurors to put themselves in the various positions Stephanos had been put in as a result of this accident. Among other things, counsel stated to the jurors that "You're going to have to be willing to undergo essentially a

head-on crash with a tractor-trailer. You are going to have to have so many bones in your body broken that it's going to require pins, screws and plates to put you back together. You're going to be in intensive care for three days, you're going to be in a hospital for three weeks. You're going to be in a hospital bed for four months."

Defendants, who had previously raised an objection to counsel's closing argument as violating the Golden Rule, again objected. After the court overruled the objection, plaintiffs' counsel continued with this line of argument, by stating, among other things, that "[y]ou cannot enjoy the pleasures life has to offer. You are deprived of the ability to be the father that you want to be with your children and the lover that you want to be with your high school sweetheart."

The so-called "Golden Rule" argument urges the jurors to place themselves in the position of plaintiff or to allow such recovery as they would wish if in the same position. *Opatut v. Guest Pond Club*, 188 Ga. App. 478, 481 (5) (373 SE2d 372) (1988) (citing *Earl v. Edwards*, 117 Ga. App. 559, 560 (3) (161 SE2d 438) (1968)). It is improper because it asks the jurors to consider the case, not objectively as fair and impartial jurors, but rather from the biased, subjective standpoint of a litigant. 75A AmJur2d, Trial, § 650 (1991). It has been generally held that counsel's invocation of the Golden Rule is reversible error if objected to, unless the objection is sustained and a curative instruction given. See 70 ALR2d 935 (1960). Here, the court overruled the objection.[1]

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED MARCH 8, 1996.

*Freeman & Hawkins, Warner S. Fox, Michael J. Goldman*, for appellants.

*Dwyer & White, J. Matthew Dwyer, Jr., Carmen Smith, Anne W. Sapp*, for appellees.

---

[1] Due to the bases for reversal in Divisions 2 and 4, we do not decide whether other improper comments made by plaintiffs' counsel during closing argument (Division 1) give rise to reversible error, in that it is questionable whether defendants made proper and timely objections at trial. It is also unnecessary to decide whether the court committed reversible error in its erroneous admission of the FAA letter (Division 3). We have reviewed the other improper comments and erroneous admission of the letter because of the possibility that upon retrial the same comments will be made and the letter will sought to be admitted on the same ground as at this trial.